******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES *v.* THE
TRAVELERS INDEMNITY
COMPANY ET AL.
(AC 46677)

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES *v.* YALE
UNIVERSITY ET AL.
(AC 46678)

Elgo, Moll and Suarez, Js.

*Syllabus*

In each of two cases, the plaintiff Commission on Human Rights and Opportunities filed an administrative appeal in the Superior Court from a decision of its human rights referee dismissing a complaint for age discrimination per se in violation of statute (§ 46a-60 (b) (6)) against each defendant, an insurance company and a university. The complainant, who was in his fifties, had alleged that each defendant's use of the phrase "recent college graduates" or "recent graduate" in published job advertisements were written so as to discriminate against individuals on the basis of age. The trial court found that those phrases were not a proxy for age because a recent college graduate can be of any age and rendered judgment in each case dismissing the appeal. In separate appeals to this court, the plaintiff claimed that the trial court improperly concluded that each defendant had not engaged in age discrimination per se in violation of § 46a-60 (b) (6). *Held*:

The defendant in each case could not prevail on its claims that the trial court did not have subject matter jurisdiction over the plaintiff's administrative appeal, as the matter was not moot because the insurance company no longer used the phrase "recent college graduates" in its advertisements, the plaintiff's standing to bring the administrative appeal was not dependent on the complainant's standing, despite the latter having abandoned his failure to hire claim and his failure to participate in these appeals, and the plaintiff had statutory (§ 46a-82 (b)) standing, having made a colorable claim that each defendant had engaged in a discriminatory practice that affected the interests of the complainant and others.

The trial court did not err in resolving the plaintiff's claim that the referee had improperly decided the case, as it properly analyzed and resolved the plaintiff's claim that the job posting amounted to age discrimination per se, having properly concluded that the phrases "recent college graduate" and "recent graduate" did not express a preference for a younger class of applicants and the plaintiff failed to demonstrate that the referee acted unreasonably, arbitrarily, illegally, or in abuse of her discretion.

Argued May 28—officially released October 29, 2024

*Procedural History*

Appeal, in each case, from a decision of a human rights referee for the plaintiff dismissing a complaint alleging age discrimination by the named defendant, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Budzik, J.*; judgment in each case dismissing the appeal, from which the plaintiff filed separate appeals to this court. *Affirmed.*

*Michael E. Roberts*, for the appellants (plaintiff in each case).

*Allison P. Dearington*, with whom, on the brief, was *Jessica L. Chamberlin*, for the appellee in AC 46677 (named defendant).

*Kevin C. Shea*, with whom, on the brief, was *Jordan J. Kowalski*, for the appellee in AC 46678 (named defendant).

*Opinion*

SUAREZ, J. These two appeals, although not consolidated, involve closely related claims. In Docket No. AC 46677, the plaintiff, the Commission on Human Rights and Opportunities (CHRO), appeals from the judgment of the trial court dismissing its administrative appeal brought against the defendant Travelers Indemnity Company (Travelers).[1] The plaintiff claims that the trial court erred in concluding that Travelers had not engaged in age discrimination per se, in violation of

---

[1] The CHRO brought the administrative appeal to the Superior Court in its own capacity. The CHRO was named as a defendant in its capacity as the agency under which the human rights referee issued the decision from which the commission appealed. See, e.g., *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 322 Conn. 154, 157 n.1, 140 A.3d 190 (2016). Glenn Liou, the complainant in the underlying action, was named as a defendant for the purpose of making him a party to the appeal pursuant to General Statutes § 4-183. Liou, however, is not participating in this appeal.

General Statutes § 46a-60 (b) (6),[2] by means of posting a job advertisement that contained the phrase "recent college graduate." In Docket No. AC 46678, the CHRO appeals from the judgment of the trial court dismissing its administrative appeal brought against the defendant Yale University (Yale).[3] The plaintiff claims that the court erred in rejecting its claim that Yale had engaged in age discrimination per se, in violation of § 46a-60 (b) (6), by means of posting a job advertisement that contained the phrase "recent graduate." We affirm the judgments of the trial court.

## AC 46677

The following undisputed facts, as set forth by the trial court, and procedural history are relevant to this appeal. "In November of 2015, Travelers publicly posted a job notice for an entry level systems engineer. The job description stated, inter alia, that Travelers was '[s]eeking upcoming and/or recent college graduates with one or less years of experience in this job area for the IT Early Career Area.' On November 3, 2015, Glenn Liou viewed Travelers' job description on job search websites, which may have included the websites Indeed.com and Careerbuilder.com. [Liou] applied for the Travelers job. In his application, [Liou] indicated

[2] Section 46a-60 is part of the Connecticut Fair Employment Practices Act, which is codified at General Statutes § 46a-51 et seq. Although § 46a-60 has been amended several times since the events underlying these two appeals; see, e.g., Public Acts 2017, No. 17-118; those amendments have no bearing on the merits of these appeals. In the interest of simplicity, we refer to the current revision of the statute.

[3] Similar to the procedural history in AC 46677; see footnote 1 of this opinion; in AC 46678, the CHRO was named as a defendant in its capacity as the agency under which the human rights referee issued the decision from which the commission appealed, and Glenn Liou, the complainant in the underlying action, was named as a defendant for the purpose of making him a party to the appeal pursuant to General Statutes § 4-183. Liou is not participating in this appeal.

that he had a bachelor's degree and experience in various computer and programming areas. [Liou] never heard back from Travelers."

In 2016, Liou filed an affidavit of alleged discriminatory practice with the CHRO claiming to be aggrieved by Travelers' failure to hire him. He averred that he was fifty-five years of age and that, by seeking to hire "recent college graduates," Travelers was "trying to discourage old candidates age [forty] and above from applying" for the posted position. Liou's original complaint was amended to add the CHRO as a prosecuting party pursuant to § 46a-54-40a (a) (2) of the Regulations of Connecticut State Agencies, thereby purporting to expand the scope of the original complaint for the purpose of seeking relief on behalf of other persons aggrieved by the job posting. The amended complaint alleged that "the advertisements published by [Travelers] were written in such a manner as to have the purpose or effect of restricting employment opportunities so as to discriminate against individuals on the basis of age" and had "the purpose or effect of indicating a preference or specification so as to discriminate against individuals on the basis of age." The amended complaint expressly alleged age discrimination in violation of § 46a-60.

On February 13, 2019, a human rights referee (referee) held a public hearing. Thereafter, the CHRO and Travelers submitted posthearing briefs.[4] In her memorandum of decision, the referee noted that the CHRO contended that the language of the job posting was inherently unlawful per se under § 46a-60 (b) (6) and that it need not present proof of discriminatory effects. The referee noted that Travelers argued that neither the CHRO nor Liou had standing because of the lack

_____

[4] Liou joined in the CHRO's posthearing brief. By the time of the hearing, Liou abandoned his individual failure to hire claim.

of any demonstrated injury to Liou, or persons other than Liou, caused by the job posting at issue. Alternatively, Travelers argued that the job posting did not violate § 46a-60 (b) (6), as argued, because it did not reflect a preference for workers of a certain age and there was no proof that it restricted the employment opportunities of any allegedly aggrieved person.

In her memorandum of decision, the referee concluded that "there is a complete lack of evidence to support the charge of discriminatory practice in violation of § 46a-60 (b) (6). The [CHRO], as a complaining party in its own name, and the individual complainant [Liou], have proved no set of facts that would entitle them to relief under the direct or inferential allegations in the compliant. There is no evidence, let alone ample evidence, to support a finding that the inclusion of 'recent college graduates' in [Travelers'] job notice was intended to, and did, have the discriminatory effect [of] imposing an age restriction segregating or separating employees because of their age or expressing a preference for a younger class of applicants [or] erecting a barrier restricting and limiting job opportunities of applicants because of their age." Thus, the referee dismissed the amended complaint.

The CHRO appealed from the referee's decision to the Superior Court pursuant to General Statutes § 46a-94a and in accordance with General Statutes § 4-183. In its memorandum of decision dismissing the CHRO's administrative appeal, the court, after summarizing the findings of the referee, stated: "The basic issue in this appeal is whether Travelers' advertisement of a job seeking 'recent college graduates' is, by itself, per se age discrimination. The court concludes that it is not. As an initial matter, the court observes that there is no evidence in the record as to the age characteristics of recent college graduates. Therefore, there is no factual

basis upon which the referee can make the factual conclusion that 'recent college graduates' is a proxy for age. The court recognizes that some courts have held that advertising for 'recent college graduates' is per se age discrimination. . . .

"Nevertheless, this court agrees with those courts holding that the phrase 'recent college graduates' is not per se discriminatory. . . . The court reaches the conclusion that the phrase 'recent college graduates' is not per se discriminatory both because this court views [cases supporting that conclusion] to be better reasoned and also because, on the factual record before the referee in this case, there was no factual basis to conclude that 'recent college graduates' evidences a preference for younger applicants.

"Finally, this court holds that CHRO's reliance on *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 357 A.2d 498 (1975), is misplaced. The court in *Evening Sentinel* held that newspaper job advertisements published under the headings 'Help Wanted Male' and 'Help Wanted Female' were per se sex discrimination and that the newspapers publishing such advertisements may be prohibited from publishing such facially discriminatory advertisements. . . . The court in *Evening Sentinel* said nothing about age discrimination generally, or whether the phrase 'recent college graduates' constituted per se age discrimination. As relevant to the case at bar, *Evening Sentinel* stands only for the proposition that an entity may be prohibited from publishing facially discriminatory job advertisements. *Evening Sentinel* offers no assistance in determining whether the phrase 'recent college graduates' is, in fact, discriminatory or, more accurately, is a proxy for age. As set forth above, this court concludes that, standing by itself, the phrase 'recent college graduate' is not a proxy for age because a recent college

graduate can be of any age." (Citations omitted.) This appeal followed.

### A

Before reaching the merits of the claim raised by the CHRO in this appeal, we will address three distinct arguments raised by Travelers by which it challenges the trial court's subject matter jurisdiction over the administrative appeal brought by the CHRO. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Hepburn* v. *Brill*, 348 Conn. 827, 838–39, 312 A.3d 1 (2024). "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 107 Conn. App. 507, 511, 946

A.2d 252, cert. denied, 289 Conn. 902, 957 A.2d 870 (2008).

1

First, Travelers argues that "this case [was] moot and should [have been] dismissed" because it "long ago agreed to stop using the phrase 'recent college graduate' in its Connecticut job postings."[5] Travelers relies on the fact that the CHRO made clear in the trial brief that it submitted to the referee that it sought the issuance of an order causing Travelers to "cease and desist from publishing, or causing to be published, job postings with language indicating a preference directed to upcoming or recent college graduates." Travelers notes that, during the 2019 public hearing before the referee, its counsel represented that Travelers had voluntarily stopped using the language at issue and that it would not use similar language in the future. Travelers argues that, because it had already implemented the primary relief sought by the CHRO, the record reflects that there was no longer a controversy between the parties. The CHRO argues that Travelers' bare assurances that it has voluntarily ceased the conduct at issue does not give rise to mootness because there exists a possibility that Travelers may once more engage in the conduct at issue in the future.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the

---

[5] Before the referee, Travelers argued that the case was moot because it had already implemented the primary relief requested by the CHRO. Before the trial court, Travelers likewise argued that the case had become moot.

interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the trial] court cannot grant . . . any practical relief through its disposition of the merits . . . . [I]t is not the province of [the] courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . When . . . events have occurred that preclude [the] court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Kemon* v. *Boudreau*, 205 Conn. App. 448, 467, 258 A.3d 755 (2021).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a . . . court of its power to determine the legality of the practice, because, [i]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways. . . . The voluntary cessation exception to the mootness doctrine is founded on the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior. . . . Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent, and a case becomes moot only if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. . . . The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (Citations omitted; internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 139–40, 210 A.3d 1 (2019).

Here, Travelers has asserted that it has ceased using the allegedly discriminatory job posting and that it will

not use similar language in future job postings. The voluntary cessation by Travelers occurred in the context of the public hearing before the referee in this action and not because external factors make the job posting at issue in this case unnecessary. Nor is there undisputed evidence to support a conclusion that it is absolutely clear that similar language could not reasonably be expected to be used by Travelers in the future. Without passing on the veracity of its representation, we nonetheless observe that there is also nothing in the record to undermine a belief that Travelers strategically altered its conduct in an attempt to evade review of its posting. Nothing in the record suggests that Travelers would not be free to resume its practice of using similar language in a job posting in the future. Only the representations of public officials or official governmental actors are accorded some amount of deference with respect to the voluntary cessation exception. See, e.g., *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 21, 287 A.3d 557 (2023) ("[w]hen governmental actors have voluntarily ceased the conduct alleged to have been unlawful . . . we have determined that some deference is appropriate"); *Sullivan* v. *McDonald*, 281 Conn. 122, 127, 913 A.2d 403 (2007) ("[w]hen the parties are public officials, the court may place greater stock in their representations than the court otherwise might"). In the present case, it is undisputed that Travelers is a private entity.

Here, beyond its representations during the context of this administrative appeal, nothing in the record makes it absolutely clear that Travelers will not resume using job postings that contain the same or similar language at issue in this case—language that Travelers continually insists was proper in the first place. We cannot say that there is any reasonable expectation that the conduct will not reoccur in the future. Accordingly, we are not persuaded in light of the facts of the present

case that Travelers' voluntary cessation of using the challenged language should have permitted it to evade judicial review of the referee's decision in this case.

2

Second, Travelers argues that the trial court's judgment of dismissal should be affirmed on the ground that Liou lacked standing to bring the complaint.[6] According to Travelers, it is undisputed that Liou was a recent college graduate and, thus, "he claims to be a part of the group to which Travelers' posting referred . . . ." Also, Travelers relies on the fact that Liou, in fact, applied for the position at issue. Moreover, Travelers argues that nothing in Liou's application demonstrated that he possessed the technical skills required of the position. Travelers argues that Liou did not meet the legitimate nondiscriminatory criteria set forth in the job posting. Travelers argues that, in light of these undisputed facts in the record, Liou could not demonstrate that Travelers restricted his employment opportunities.

As we have explained previously in this opinion, although Liou filed the complaint before the CHRO, the CHRO became a party in its own right independent of Liou, who abandoned his failure to hire claim. The CHRO brought the administrative appeal from the decision of the referee to vindicate its own interests, not necessarily those of Liou. Likewise, Liou is not participating in the present appeal. Travelers has not cited any authority to support the proposition that the trial court's subject matter jurisdiction over the administrative appeal brought by the CHRO was in any way dependent on whether Liou had standing to bring the appeal

---

[6] Before the referee, Travelers argued that "a justiciable controversy" did not exist because Liou did not present any evidence of a compensable injury. Before the trial court, Travelers argued that the administrative appeal should be dismissed because Liou did not suffer a direct injury and, thus, lacked standing.

in his own right. Because the CHRO has standing in its own right, any issue as to Liou's standing did not deprive the Superior Court and does not deprive this court of subject matter jurisdiction.

3

Third, Travelers argues that the judgment of dismissal should be affirmed on the ground that the CHRO lacked standing to bring the complaint.[7] Travelers argues that "[t]he CHRO failed to establish standing in the matter before the referee as there is no demonstrated injury to the public merely because Travelers posted the job position in question (and where the CHRO's claim is based on a complaint filed by [Liou] who suffered no injury). CHRO's general invocation of the public interest is no substitute for evidence of a demonstrated alleged injury to the public." Travelers argues that § 46a-60 (b) (6) obligated the CHRO to prove that its job posting discriminated against more than one individual, but it failed to demonstrate that it had caused any harm to Liou, let alone others. Travelers also argues that, to demonstrate that an actual controversy existed, it was insufficient for the CHRO to raise merely "symbolic interests on behalf of others who may not have applied [for] the job because of the posting's language . . . ."

Our Supreme Court has explained that "[s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in

---

[7] Before the referee, Travelers argued that the CHRO lacked standing because it had not proven a direct injury capable of redress. Likewise, before the trial court, Travelers argued that the CHRO lacked standing and the administrative appeal should be dismissed because it failed to present any evidence that Travelers, by means of the job posting at issue, had discriminated against or harmed any individual.

hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement [however] exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . .

"In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . The plaintiff must be within

the zone of interests protected by the statute." (Citations omitted; internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 64–65, 946 A.2d 862 (2008).

As we have explained previously in this opinion, the CHRO joined Liou's individual complaint brought against Travelers and sought an order of general applicability enjoining Travelers from using the job posting at issue. In its amended complaint, the CHRO alleged that, upon information and belief, Travelers had published job advertisements seeking "recent college graduates . . . ." The CHRO further alleged that the advertisements discriminated on the basis of age in violation of federal and state law and that they "adversely affect[ed] the legal rights of persons other than and in addition to [Liou]." Contrary to Travelers' arguments, the CHRO thus made a colorable claim that Travelers had engaged in a discriminatory practice that adversely affected the interests of Liou and others.

General Statutes § 46a-82 (b) provides: "The commission, whenever it has reason to believe that any person has been engaged or is engaged in a discriminatory practice, may issue a complaint, except for a violation of subsection (a) of section 46a-80 [pertaining to certain types of employment discrimination cases]." The statute unambiguously places the CHRO within the zone of interests safeguarded by the statute. The right of the CHRO to file a complaint in this matter was not dependent on a showing of classical aggrievement, as Travelers' arguments seem to suggest, but upon a showing of statutory aggrievement, which it readily satisfied by means of the colorable claim set forth in its amended complaint on behalf of the public interest. "The commission clearly is empowered by statute to prosecute complaints on issues of public interest but it must strictly comply with the governing statutes and the regulations it has caused to be issued." *Groton* v. *Commission on*

*Human Rights & Opportunities*, 169 Conn. 89, 100, 362 A.2d 1359 (1975). Pursuant to § 46a-82 and § 46a-54-40a (a) (2) of the Regulations of Connecticut State Agencies,[8] the CHRO was empowered to prosecute a complaint on an issue of public interest based upon its colorable claim of a discriminatory job posting that affected the rights of Liou and others. For the foregoing reasons, we reject Travelers' argument that the CHRO lacked standing.

B

Next, we address the CHRO's claim that the court improperly concluded that Travelers had not engaged in age discrimination per se, in violation of § 46a-60 (b) (6), by means of posting a job advertisement that

[8] Section 46a-54-40a of the Regulations of Connecticut State Agencies provides: "(a) The commission may amend any complaint filed under section 46a-82 (a) of the Connecticut General Statutes to substitute or add itself as a complaining party whenever:

"(1) A complainant wishes to withdraw her or his complaint, but the commission believes that the practices complained of raise issues of public policy or affect the legal rights of persons similarly situated to the complainant;

"(2) A complainant wishes to pursue her or his complaint, and the commission believes that the practices complained of adversely affect the legal rights of persons other than the complainant; or

"(3) A complainant dies and the commission believes that the practices complained of raise issues of public policy or affect the legal rights of persons similarly situated to the complainant. Alternatively, or additionally, the complaint may be amended pursuant to section 46a-54-38a of the Regulations of Connecticut State Agencies to allow a representative of the complainant's estate to pursue the complaint.

"(b) The commission may amend a complaint to substitute or add itself as the complaining party under subsection (a) of this section at any time after a complaint has been filed under section 46a-82 of the Connecticut General Statutes but prior to appointment of the presiding officer in accordance with section 46a-84 (b) of the Connecticut General Statutes. Any such amendment shall relate back to the date the original complaint was filed with the commission. Any amendment to substitute or add the commission shall be by a majority vote of the members present and voting at a commission meeting and shall be signed by a commissioner authorized by the commission to sign."

contained the phrase "recent college graduates." We are not persuaded.

The CHRO argues that, before the referee, it litigated its claim "under a 'per se' theory of discrimination relying primarily on our Supreme Court's decision in *Evening Sentinel* v. *National Organization for Women*, [supra, 168 Conn. 26]. The referee noted the [CHRO's] choice of theory multiple times in her final decision but ultimately elected to apply a different theory, doing so based on her own reading of the operative complaints and an overly limited reading of *Evening Sentinel*, and only after the parties had tried the case and submitted it for decision."

The CHRO argues that, before the court, its primary claim of error was that "the referee erred in applying a different theory of discrimination than the [CHRO] had chosen, thereby altering the burden of proof after the case had been tried and briefed, without any prior notice to the parties." (Internal quotation marks omitted.) According to the CHRO, before the court, it "secondarily argued that if the court were to agree as to the primary claim, it should further conclude that only one action by the referee was appropriate as a matter of law: finding that the use of 'upcoming and/or recent college graduates' by Travelers in advertising an employment opportunity was discrimination per se." (Emphasis omitted.) Thus, the CHRO argues, by means of its administrative appeal, it sought a judgment modifying the agency's decision in its favor *rather* than a judgment remanding the case to the agency for further proceedings, namely, a determination of whether Travelers had engaged in age discrimination per se.

The CHRO claims that the court improperly "reframed the appeal" by distilling the appeal to one issue, namely, whether Travelers had engaged in age discrimination per se in light of *Evening Sentinel*. The CHRO argues

that the court thereby bypassed the primary claim that it had raised in its appeal, namely, whether the referee had improperly decided the case on the basis of an improper legal theory on which the CHRO had not relied. Moreover, the CHRO argues that the court mistakenly stated in its memorandum of decision that the CHRO claimed that the referee "did not address" its claim that per se discrimination had occurred. The CHRO argues that the court's statement was inaccurate because it expressly argued before the court that the referee had correctly acknowledged more than once in her decision the CHRO's argument that discrimination per se had occurred, but that the referee had nonetheless erroneously applied a different legal theory to its claim. According to the CHRO, for the trial court to have "bypass[ed]" its primary claim and merely to have resolved the issue of whether Travelers had engaged in discrimination per se amounted to an abuse of the trial court's discretion and is a basis for this court to reverse its judgment dismissing the appeal.

"Judicial review of an administrative decision is governed by [§] 4-183 (a) of the [Uniform Administrative Procedures Act (UAPA), General Statutes § 4-166 et seq.], which provides that [a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the [S]uperior [C]ourt . . . .

"Review of an appeal taken from the order of an administrative agency such as the [CHRO] is limited to determining whether the agency's findings are supported by substantial and competent evidence and whether the agency's decision exceeds its statutory authority or constitutes an abuse of discretion. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . In determining whether an administrative finding is supported by

substantial evidence, the reviewing court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness . . . . As with any administrative appeal, our role is not to reexamine the evidence presented to the [CHRO] or to substitute our judgment for the agency's expertise, but, rather, to determine whether there was substantial evidence to support its conclusions. . . . If the decision of the agency is reasonably supported by the evidence in the record, it must be sustained." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Commission on Human Rights & Opportunities*, 212 Conn. App. 578, 586–87, 276 A.3d 447, cert. denied, 345 Conn. 901, 282 A.3d 466 (2022).

"Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Cases that present pure questions of law, however, invoke a broader standard of review . . . . For pure questions of law, plenary review should be applied . . . [if] the issue of law ha[s] not been time-tested by the [agency] or previously considered by the courts." (Citation omitted; internal quotation marks omitted.) *O'Reggio* v. *Commission on Human Rights & Opportunities*, 219 Conn. App. 1, 11, 293 A.3d 955 (2023), aff'd, 350 Conn. 182,     A.3d     (2024).

The CHRO's primary argument is that the court decided the appeal on the basis of an issue that it raised sua sponte rather than addressing the claim that the CHRO had advanced. A review of the court's memorandum of decision unmistakably contradicts the CHRO's contention that the court did not consider whether the

referee had applied a different legal theory to its claim of age discrimination than that on which the CHRO had relied. In footnote 1 of its decision, the court stated: "[A]fter reviewing the parties' memoranda of law, the court concludes that CHRO is only claiming that Travelers' advertisement is illegal per se under the holding of [*Evening Sentinel*]. . . . CHRO claims that the decision below did not address this claim. . . . [In its brief, the CHRO argues that 'the referee erred in applying a different theory of discrimination than the [CHRO] had chosen']. The court disagrees." (Citations omitted.) The court then cited to two portions of the referee's decision in which the referee specifically referred to the CHRO's claim that the job advertisement at issue constituted age discrimination per se.[9]

Focusing on the court's use of the word "address," the CHRO argues that the court misconstrued its claim to be that the referee simply had failed to address or acknowledge the per se theory on which it had relied. Viewing the court's decision in its entirety, however, we disagree with this interpretation of the court's decision. "As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making . . . . Effect must be given to that which

---

[9] Specifically, the court referred to the portion of the referee's decision in which she stated, "[t]he [CHRO] contends that [Travelers'] advertisement of an employment opportunity indicating, inter alia, that it was seeking upcoming and/or recent college graduates with one or less years of experience in this job area for the IT Early Career area is illegal per se, or inherently unlawful in and of itself, under . . . § 46a-60 (b) (6) without the need for extrinsic proof . . . ." The court also referred to the portion of the referee's decision in which she stated: "The term recent college graduate in a job advertisement does not in and of itself establish any employment restriction against the prohibited factor of age." (Internal quotation marks omitted.)

is clearly implied as well as to that which is expressed.
. . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Sessa* v. *Reale,* 213 Conn. App. 151, 161–62, 278 A.3d 44 (2022). We are persuaded that the court clearly recognized the nature of the CHRO's claim of error and that the issue before it was whether the referee had failed to *apply* the per se theory to the facts of the present case. The court referred to portions of the referee's decision in which she plainly had identified and rejected the per se discrimination claim raised by the CHRO. The court also unambiguously rejected this claim. Our review of the referee's decision amply supports the court's conclusion in this regard. For these reasons, we conclude that the CHRO has failed to demonstrate that the court did not resolve this aspect of its appeal.

The CHRO also argues that it was improper for the court to have reached the merits of the legal conclusion that had been reached by the referee, namely, that the CHRO had failed to prove its claim that the job advertisement constituted age discrimination per se. The CHRO argues that the court could not properly reach the merits of this argument unless it first concluded that the referee had improperly failed to resolve the claim of age discrimination per se. The CHRO has not set forth any persuasive authority in support of this contention. The CHRO recognizes that it invited the court to consider whether, as a matter of law, Travelers' job advertisement constituted age discrimination per se. Contrary to the CHRO's arguments, the court did not consider this claim sua sponte but was guided by authority submitted to it by both parties. Moreover, the fact that the CHRO argued that the court should consider the merits of this issue only after first concluding that the referee had failed to reach the merits of the issue did not as a matter of law dictate the proper

analytical path that the court should follow in addressing the appeal. Even if the court deemed it appropriate to have reached the merits of the dispositive discrimination per se claim without first considering what the CHRO deems to have been its "primary" claim of error, it was the prerogative of the court to do so in light of the fact that the discrimination per se claim had been adequately briefed by the parties and, in light of the claim raised by the CHRO, was squarely before it. Although the court was limited to the claims properly before it, the CHRO has not demonstrated that the court's analytical path was either an abuse of its discretion or legally incorrect.

Lastly, beyond arguing that the referee applied the "wrong theory" to its age discrimination claim and that the court erred in failing to resolve this "primary claim" of error, the CHRO argues that, in consideration of the analysis and conclusion in *Evening Sentinel*, Travelers engaged in age discrimination per se in violation of § 46a-60 (b) (6). There is no dispute as to the referee's findings with respect to the substance of the job advertisement at issue. The referee concluded that the reference to "recent college graduates" in Travelers' job advertisement did not indicate a preference or specification so as to discriminate on the basis of age. The referee also concluded that *Evening Sentinel*, which involved a gender segregated advertising scheme and a claim of discrimination in hiring on the basis of gender, was factually distinguishable from the present case. The court, in its review of the referee's decision, likewise concluded that the phrase "recent college graduates" did not express a preference for a younger class of applicants and that *Evening Sentinel* did not support the CHRO's claim. We agree with the court's analysis and likewise conclude that the CHRO did not demonstrate that the referee acted unreasonably, arbitrarily, illegally, or in abuse of her discretion.

## II

## AC 46678

We now turn our attention to the CHRO's appeal from the judgment of the trial court dismissing the administrative appeal that it brought against Yale. The following undisputed facts, as set forth by the court, and procedural history are relevant to this appeal. "On or about September 11, 2017, [Yale] publicly posted a job notice for a Social Entrepreneurship Fellow. The job description for the position stated, inter alia, that the 'fellowship is designed to provide a recent graduate with an opportunity to deepen their knowledge of how [s]ocial [e]ntrepreneurship at [Yale] functions at an operational level while broadening communication and networking skills.' . . . The job posting further describes the advertised 'Social Entrepreneurship Fellow position as a one year position under the supervision of [Yale's] School of Public Health with a focus and central role in Yale's mission to be a home for those at Yale interested in creating innovative solutions to challenges in health and education and . . . to inspire and support students from diverse backgrounds and disciplines to seek innovative ways to address real-work problems.' . . .

"The Social Entrepreneurship Fellow job posting included a statement that Yale is an equal opportunity employer, and that Yale does not discriminate on the basis of, inter alia, age. The job posting required a bachelor's degree, was not limited to recent graduates, and did not include an age requirement.

"[Liou] applied for the Social Entrepreneurship Fellow position. At the time of his application for the Social Entrepreneurship Fellow, [Liou] was fifty-seven years old. [Liou] was not selected to be interviewed for the Social Entrepreneurship Fellow and was not hired for

the position. [Liou] has a bachelor's degree in electrical engineering.

"[Katherine] Suits did an initial review of applications received by Yale for the Social Entrepreneurship Fellow.[10] [Suits] did not review an applicant's age, or when an applicant graduated from college when selecting those applicants who might be interviewed. [Suits] never became aware of [Liou's] age, or when he had graduated from college. [Suits] forwarded what she considered to be qualified applicants to [Martin] Klein for review.[11] [Suits] did not forward [Liou's] application for further review because [Suits] did not consider [Liou's] degree in electrical engineering, and his work experience at the United States Postal Service and as an insurance agent, among other positions, to be a good fit for the Social Entrepreneurship Fellow. [Klein] was never aware of [Liou's] application for the Social Entrepreneurship Fellow.

"No factual evidence was presented with respect to the demographics or age characteristics of recent graduates." (Footnotes added.)

In 2017, Liou filed an affidavit of alleged discriminatory practice with the CHRO claiming to be aggrieved by Yale's failure to hire him for the fellowship. Although he had raised other claims initially before the referee, Liou ultimately claimed that, in violation of § 46a-60 (b) (6), Yale had engaged in age discrimination by way of its advertising. Liou focused on the fact that Yale's job advertisement included the phrase "recent graduate." The CHRO appeared before the referee in support of Liou's complaint. On November 13, 2019, the referee held a public hearing with respect to the issue of liability

---

[10] The record reflects that Suits is a recruiter employed by Yale.

[11] The record reflects that Klein was the Senior Advisor to the Dean of Yale's School of Public Health.

only. Following the hearing, the CHRO and Yale filed posthearing briefs.

The referee thereafter issued a memorandum of decision in which she considered and rejected the CHRO's argument that the reference to "recent college graduate" in Yale's posting "is facially discriminatory and a violation of § 46a-60 (b) (6) in and of itself . . . ." The referee noted Liou's reliance on *Evening Sentinel* but concluded that the decision was distinguishable and, thus, not persuasive authority. The referee concluded that Liou "failed to prove by a preponderance of the evidence that [Yale] posted the Social Entrepreneurship Fellow position in such a manner as to restrict employment . . . or indicate a preference or specification, so as to discriminate against individuals on the basis of age. . . .

"Under any analysis, the Social Entrepreneurship Fellow job posting did not restrict employment at all. And the *Evening Sentinel* decision, on which the complainant relies, held newspapers, which were nonemployer entities, liable for aiding and abetting unlawful employment advertising practices of others involving facial gender based classifications, and is inapposite. *Evening Sentinel* is materially distinguishable and does not change this conclusion." The referee, therefore, dismissed the complaint.

In August, 2022, the CHRO appealed from the referee's decision to the Superior Court. In its memorandum of decision dismissing the CHRO's administrative appeal, the court, after summarizing the findings of the referee, stated that "the phrase 'recent graduate' is not per se discriminatory . . . because, on the factual record before the referee in this case, there was no factual basis to conclude that 'recent graduate' evidences a preference for younger applicants. Indeed, here, the referee found that the Yale job advertisement

was not restricted by age, [the advertisement] was not restricted to recent graduates, [Yale] specifically stated [in the job advertisement] that [it] did not discriminate on the basis of age, and that Yale officials did not know [Liou's] age. These facts provide a substantial basis for [the referee's] conclusion that Yale did not discriminate on the basis of age.

"Finally, this court holds that CHRO's reliance on *Evening Sentinel* . . . is misplaced. . . . The court in *Evening Sentinel* said nothing about age discrimination generally, or whether the phrase 'recent graduate' constituted per se age discrimination. As relevant to the case at bar, *Evening Sentinel* stands only for the proposition that an entity may be prohibited from publishing facially discriminatory job advertisements. *Evening Sentinel* offers no assistance in determining whether the phrase 'recent graduate' is, in fact, discriminatory, or more accurately, is a proxy for age. As set forth [previously], this court concludes that, standing by itself, the phrase 'recent graduate' is not a proxy for age because a recent graduate can be of any age." Thus, the court dismissed the appeal. This appeal followed.

A

Before reaching the merits of the CHRO's appeal, we address a question of subject matter jurisdiction raised by Yale. Yale appears to argue that the CHRO lacked standing to bring the underlying administrative appeal before the trial court. Yale argues that, although the trial court did not consider this issue, this court nonetheless may sustain the trial court's judgment after concluding that the CHRO did not have standing to challenge the referee's decision. Yale also argues that the CHRO lacks standing to bring the present appeal before this court and that this court should dismiss the appeal.

These distinct jurisdictional challenges are grounded in Yale's argument that "[t]he [CHRO] must establish

that it suffered some direct injury because of [Yale's] job posting to seek redress through the judicial process. . . . [T]he [CHRO] has failed to do so . . . ." Yale recognizes that, in its administrative appeal, the CHRO alleged that it brought the appeal "on behalf [of] and in the interest of the people of the state of Connecticut . . . ." The CHRO also alleged that it "is aggrieved by the final decision of the [referee], in that the improper application of the law to this complaint will, if not corrected, thwart the [CHRO's] statutory mandate of enforcing Connecticut's civil rights and antidiscrimination statutes, in this [case] as well as in cases to come." Yale maintains, however, that, "[i]n this case, the [CHRO] has raised hypothetical interests on behalf of others who may have not applied to the [Social Entrepreneurship] Fellow advertisement because of the advertisement's language . . . without any evidence that others did indeed not apply because of the 'recent graduate' language." According to Yale, "[t]he [CHRO] has not demonstrated how, if at all, it has been aggrieved by the referee's and the Superior Court's dismissal of its claims. It has not identified a legitimate injury to the public solely due to [Yale's] posting in question; nor can it, particularly given that the [CHRO's] claim remains tethered to a complaint filed by [Liou], who also suffered no injury. Put differently, the [CHRO's] general reference to the public interest does not negate its need to show tangible evidence of an actual injury to the public."

The arguments raised by Yale with respect to the CHRO's standing to participate in the proceedings before the referee and to bring the underlying administrative appeal are legally indistinguishable from those raised by Travelers in the appeal in AC 46677. Accordingly, for the reasons set forth in part I A 3 of this opinion, we reject Yale's claim that the CHRO lacked standing before the trial court. To the extent that Yale

also argues that this court lacks subject matter jurisdiction over the present appeal, not because the CHRO was not aggrieved by the judgment from which it appeals but because the CHRO lacked standing before the trial court, that argument likewise fails.

B

We now turn to the CHRO's claim that the court improperly concluded that Yale had not engaged in age discrimination per se, in violation of § 46a-60 (b) (6), by means of posting a job advertisement that contained the phrase "recent college graduate." We are not persuaded.

The CHRO's arguments are indistinguishable from the arguments that it raised in connection with its appeal in AC 46677, which involved a nearly identical claim of age discrimination based on similar language in a job advertisement, was brought by the same parties, and was adjudicated by the same referee. The referee's decisions in both underlying cases follow the same analytical path. The same trial court judge rendered the judgments at issue in both appeals, and the court's decisions follow the same analytical path and are based on the same authority. The CHRO's brief in each appeal raises similar legal arguments. As it did in AC 46677, the CHRO argues, primarily, that the referee failed to evaluate the case under the legal theory under which it was brought, as a claim of age discrimination per se under *Evening Sentinel*. The CHRO also argues that the court failed to resolve this primary claim and abused its discretion by reaching the merits of the secondary question raised in its administrative appeal, namely, whether Yale's job advertisement amounted to discrimination per se. Finally, the CHRO argues that, "[i]f this court finds that the [trial court] erred in not deciding the primary claim before it, and that the referee erred in applying a different theory than the [CHRO] had

chosen, it may then address the ultimate question: whether the use of 'recent graduate' in a job advertisement by Yale was discriminatory per se."

It would serve no useful purpose for this court to repeat the analysis set forth in part I B of this opinion, which governs our resolution of the CHRO's arguments. Having carefully reviewed the referee's decision and the decision of the trial court, we conclude that the referee carefully addressed and properly rejected the CHRO's claim of discrimination per se and that the court did not err in resolving the CHRO's claim that the referee had improperly decided the case on a different legal theory. We likewise conclude that the court properly analyzed and resolved the CHRO's claim that the job posting amounted to age discrimination per se and rejected its reliance on *Evening Sentinel*.

The judgments are affirmed.

In this opinion the other judges concurred.